IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-37

 No. 49A20

 Filed 16 April 2021

 STATE OF NORTH CAROLINA

 v.
 FAYE LARKIN MEADER

 Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of

 the Court of Appeals, 269 N.C. App. 446, 838 S.E.2d 643 (2020), finding no error after

 appeal from judgments entered on 19 December 2018 by Judge R. Stuart Albright in

 Superior Court, Guilford County. Heard in the Supreme Court on 15 February 2021.

 Joshua H. Stein, Attorney General, by Matthew Baptiste Holloway, Assistant
 Attorney General, for the State-appellee.

 Bonnie Keith Green for defendant-appellant.

 BERGER, Justice.

¶1 On December 19, 2018, a Guilford County jury found defendant Faye Larkin

 Meader guilty of felony breaking or entering a motor vehicle, misdemeanor larceny,

 and misdemeanor possession of stolen property.1 Defendant received a split sentence,

 and she was placed on supervised probation. The Court of Appeals determined that

 the trial court did not err when it declined to instruct the jury on voluntary

 1 The trial court arrested judgment on the possession of stolen goods conviction.
 STATE V. MEADER

 2021-NCSC-37

 Opinion of the Court

 intoxication. Defendant appeals.

 I. Factual and Procedural Background

¶2 At approximately 2:00 p.m. on November 22, 2017, defendant arrived at a

 mental health counseling center in Greensboro, North Carolina. Law enforcement

 was contacted, and dispatch was informed that defendant was behaving as if she was

 intoxicated.

¶3 Earlier that afternoon, a family arrived for an appointment at the same

 counseling center. When the family returned to their vehicle after the appointment,

 they noticed that the driver’s side door was open, and items were missing from their

 vehicle. Among the missing items were an ammunition clip, a pair of sunglasses, and

 a drink koozie. In addition, a soda can, which did not belong to any of the family

 members, had been placed in a cupholder. The husband called law enforcement to

 report the incident. The wife returned to the counseling center, where she observed

 defendant drinking soda out of a cup. The wife recognized defendant because they

 had attended school together.

¶4 The husband returned to the counseling center and informed an employee that

 someone had broken into his vehicle. He asked if anyone had “seen anything weird.”

 Defendant, who was still in the lobby of the counseling center at the time, “stood up

 and came over to where [the family was] and started talking” to them. Defendant

 informed the husband that she knew who broke into the car and provided him with a
 STATE V. MEADER

 2021-NCSC-37

 Opinion of the Court

 name. When the husband informed defendant that law enforcement had been

 contacted, defendant got “irate” and said, “no cops.”

¶5 When the husband walked past defendant to exit the counseling center, he

 “smelled alcohol somewhere.” Two other witnesses stated that defendant “appeared

 to be” or “seemed” intoxicated.

¶6 Caterina Sanchez, a therapist at the counseling center, testified that defendant

 “was disruptive in terms of not wanting to leave and not really listening to us [ b]ut

 she . . . wasn’t misbehaving or anything like that.” Ms. Sanchez testified that because

 of defendant’s behavior, Ms. Sanchez decided to call law enforcement and Chris

 Faulkner, the owner of the counseling center.

¶7 Mr. Faulkner testified that, although defendant was “agitated,” she “was

 answering the [law enforcement officers’] questions . . . [and was being] fairly

 cooperative.” Mr. Faulkner advised defendant that she was banned from the

 property; when asked if she understood, defendant replied, “yes, sir.”

¶8 When officers arrived at the counseling center, they asked defendant why she

 was there. Defendant told them her father passed away the previous month and that

 she had been the victim of a domestic violence incident the day before. Defendant

 removed her pants to show officers a bruise on her thigh.

¶9 As officers escorted defendant from the center, she became agitated and stated

 that she needed to collect her shoes, bra, and purse. When defendant failed to leave
 STATE V. MEADER

 2021-NCSC-37

 Opinion of the Court

 the premises as instructed, defendant was handcuffed and escorted out. Defendant

 navigated a flight of stairs without assistance while her arms were handcuffed behind

 her back.

¶ 10 A search of the premises failed to reveal missing property, and officers were

 prepared to release defendant when they noticed a shiny object in defendant’s jacket

 pocket. Defendant told officers that the object was a cellphone, but she pulled the

 missing ammunition clip from her pocket. Defendant was then arrested for felony

 breaking or entering a motor vehicle, misdemeanor larceny, and misdemeanor

 possession of stolen property. Once at the police station, the stolen drink koozie was

 located in defendant’s jacket pocket and the stolen sunglasses were found on the

 floorboard of the patrol car.

¶ 11 On September 24, 2018, defendant was indicted on one count of felony breaking

 or entering a motor vehicle, one count of misdemeanor larceny, and one count of

 misdemeanor possession of stolen property. On December 7, 2018, defendant gave

 notice of her intent to offer the defense of voluntary intoxication. On December 17,

 2018, defendant’s case came on for trial. The trial court denied defendant’s request

 for a voluntary intoxication jury instruction. On December 19, 2018, the jury found

 defendant guilty on all charges. Defendant entered notice of appeal.

¶ 12 In denying defendant’s request for the instruction on voluntary intoxication,

 the trial court stated:
 STATE V. MEADER

 2021-NCSC-37

 Opinion of the Court

That will be denied[.] . . . [T]he [c]ourt has listened to all of
the testimony intently. I also reviewed State’s Exhibit
Number 1, which was admitted without objection. And—
and there are three videos on State’s 1. The first video
clearly shows the Defendant, and I understand that the
witnesses in the light most favorable to the Defendant have
testified that the Defendant was intoxicated. However,
during the course of the video, I could hear the Defendant’s
words. She was not slurring her words. She was speaking
in easily understandable English. There were many
questions that were asked of her to which she was
responsive. It was clear that she was responsive and was
aware of what was going on around her.

 For instance, they asked her how she got there, and
she said, well, they brought me. It was an appropriate
response to the question. She later identified, or attempted
to identify the name of the people that brought her, but in
any event, there are many other indications that she was
responsive and aware of what was going on.

 For instance, on the video you clearly hear Mr.
Faulkner, the owner of the business at issue, “You are not
allowed to come here any longer. You understand?” And
her response was, “Yes, sir.” At one point one law
enforcement officer, I believe it was a law enforcement
officer, asked her for her name, and she clearly indicated it
was Faye Larkin Meader. It was easily understandable. It
was an appropriate response, a direct response to the
question asked.

 Although she was escorted out of the business at
issue by law enforcement officers, she was able to walk
under her own power. In other words, the officers didn’t
have to carry her, did not have to put her in some type of
wheelchair, simply directed her to leave, and that’s what
she did.

 At one point, when she was sitting in the patrol car,
she was directed or requested by the officer to put your feet
 STATE V. MEADER

 2021-NCSC-37

 Opinion of the Court

 back in there for me, and the Defendant immediately
 complied, indicating she understood, was responsive and
 aware of what was going on. At one point, when she was
 attempting to articulate what happened, and how she got
 to the predicament she was in, she was complaining of
 another person selling marijuana and oxycontin.
 Oxycontin is not a—it’s not a tongue-twister, but for
 someone that was so completely intoxicated and without
 the ability to form intent, it would—it would seem to me to
 be very hard to articulate such a word very clearly and
 easily, as she did, as I witnessed in the video. At one point,
 she indicated she wanted her coat because it was cold
 outside. Again, the point is she was aware of what was
 going on, that it was cold, and that when you’re cold, you
 need a jacket. That’s exactly what she indicated.

 At one point, she was asked on the video what
 happened to the laptop computer, or words to that effect,
 and the Defendant immediately said she had no idea what
 the officer was talking about, which was, in fact, an
 accurate statement based on the facts of this case. Again,
 the Defendant was responsive and aware of what was going
 on around her, and answered that question immediately,
 appropriately, and, as it turns out, accurately.

 She was also—the Defendant was also aware of
 what was going on around her because she knew she was
 interacting with law enforcement officers. At one point she
 said, “God bless you all. You all have a hard job.” In any
 event, there is ample evidence to show that, again, she was
 responsive and aware of what was going on around her.

 ....

 No one in this case testified that the Defendant was,
 in fact, drunk. Although the testimony was that she was
 impaired or intoxicated on some type of substance. The
 substance has been unidentified.

¶ 13 In an opinion filed January 21, 2020, the Court of Appeals held that the trial
 STATE V. MEADER

 2021-NCSC-37

 Opinion of the Court

 court did not err when it declined to instruct the jury on voluntary intoxication

 because defendant failed to produce sufficient evidence of voluntary intoxication.

 State v. Meader, 269 N.C. App. 446, 450, 838 S.E.2d 643, 646 (2020). The dissenting

 judge argued that substantial evidence was presented to support a voluntary

 intoxication instruction and the failure to instruct the jury on voluntary intoxication

 constituted prejudicial error which requires a new trial. Id. at 451–56, 838 S.E.2d at

 646–50 (Brook, J., dissenting).

¶ 14 Defendant argues that substantial evidence was presented to require a

 voluntary intoxication instruction. We disagree.

 II. Standard of Review

¶ 15 To determine whether a defendant is entitled to a requested instruction on

 voluntary intoxication, this Court reviews de novo whether each element of the

 defense is supported by substantial evidence when taken in the light most favorable

 to the defendant. State v. Mash, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988).

 “Substantial evidence is such relevant evidence as a reasonable mind might accept

 as adequate to support a conclusion.” State v. Franklin, 327 N.C. 162, 171, 393 S.E.2d

 781, 787 (1990).

 III. Analysis

¶ 16 “[T]he doctrine [of voluntary intoxication] should be applied with great

 caution.” State v. Murphy, 157 N.C. 614, 617–18, 72 S.E. 1075, 1076–77 (1911). A
 STATE V. MEADER

 2021-NCSC-37

 Opinion of the Court

 defendant is not entitled to an instruction on voluntary intoxication “in every case in

 which a defendant . . . consum[es] intoxicating beverages or controlled substances.”

 State v. Baldwin, 330 N.C. 446, 462, 412 S.E.2d 31, 41 (1992).

¶ 17 To obtain a voluntary intoxication instruction, a defendant

 must produce substantial evidence which would support a
 conclusion by the judge that [s]he was so intoxicated that
 [s]he could not form [the specific] intent . . . . The evidence
 must show that at the time of the [crime] the defendant’s
 mind and reason were so completely intoxicated and
 overthrown as to render [her] utterly incapable of forming
 [specific intent]. In absence of some evidence of intoxication
 to such degree, the court is not required to charge the jury
 thereon.

 Mash, 323 N.C. at 346, 372 S.E.2d at 536 (cleaned up). “[T]here must be some

 evidence tending to show that the defendant’s mental processes were so overcome by

 the excessive use of liquor or other intoxicants that he had temporarily, at least, lost

 the capacity to think and plan.” State v. Cureton, 218 N.C. 491, 495, 11 S.E.2d 469,

 471 (1940). “A defendant who wishes to raise an issue for the jury as to whether he

 was so intoxicated by the voluntary consumption of alcohol . . . has the burden of

 producing evidence, or relying on evidence produced by the [S]tate, of his

 intoxication.” Mash, 323 N.C. at 346, 372 S.E.2d at 536. “Evidence of mere

 intoxication . . . is not enough to meet defendant’s burden of production.” Id. at 346,

 372 S.E.2d at 536.
 STATE V. MEADER

 2021-NCSC-37

 Opinion of the Court

¶ 18 Defendant argues that witnesses testified about her bizarre behavior, that she

 appeared to be intoxicated, and that there was an odor of alcohol in the counseling

 center. In addition, defendant argues that testimony and police body camera footage

 established that she was out of touch with reality, hallucinating, talking to people

 who were not present, and unaware of her surroundings. However, while defendant’s

 actions were periodically unusual, the mere fact that “[a] person may be excited,

 intoxicated and emotionally upset” does not negate “the capability to formulate the

 necessary” intent. Id. at 347, 372 S.E.2d at 537 (cleaned up). Defendant has failed

 to present substantial evidence that she was “utterly incapable” of forming specific

 intent. Id. at 346, 372 S.E.2d at 536.

¶ 19 The record reflects that defendant did not slur her speech or hesitate when

 asked to provide biographical information, and defendant gave appropriate responses

 to the law enforcement officers’ questions when prompted. As the trial court stated,

 defendant “was not slurring her words. She was speaking in easily understandable

 English. There were many questions that were asked of her to which she was

 responsive.” In addition, when police arrived and arrested defendant, she was able

 to navigate a flight of stairs with her hands cuffed behind her back. As the trial court

 noted, defendant “was able to walk under her own power” and “officers did[ not] have

 to carry her, did not have to put her in some type of wheelchair, simply directed her
 STATE V. MEADER

 2021-NCSC-37

 Opinion of the Court

 to leave, and that’s what she did.” Thus, even in the light most favorable to

 defendant, defendant has demonstrated, at best, mere intoxication.

¶ 20 In State v. Goodman, 298 N.C. 1, 14, 257 S.E.2d 569, 579 (1979), the defendant

 was charged with first-degree murder, robbery with a dangerous weapon, and

 kidnapping. Defendant argued that his voluntary intoxication prevented him from

 premeditation and deliberation necessary for a conviction of first-degree murder.

¶ 21 In that case, the defendant shared a six pack of beer with two other men,

 consumed more beer at a bar less than thirty minutes before the victim got in the car

 with the defendant, and there was beer in the car the defendant was driving. Id. at

 13–14, 257 S.E.2d at 579. However, this Court stated that “[w]hether intoxication

 and premeditation can coexist depends upon the degree of inebriety and its effect

 upon the mind and passions; no inference of the absence of deliberation and

 premeditation arises as a matter of law from intoxication.” Id. at 12, 257 S.E.2d at

 578 (citation omitted). This Court determined that, despite evidence that the

 defendant had been drinking, the defendant “was capable of premeditation and

 deliberation and could form the specific intent.” Id. at 14, 257 S.E.2d at 579. This

 Court went on to conclude that the trial court did not err when it declined to give an

 instruction on voluntary intoxication because there was “no evidence which showed
 STATE V. MEADER

 2021-NCSC-37

 Opinion of the Court

 that defendant’s capacity to think and plan was affected by drunkenness [at the time

 he shot the victim].”2 Id. at 14, 257 S.E.2d at 579.

¶ 22 Such is the case here. The undisputed evidence tended to show that defendant

 was aware of her surroundings, and in control of her faculties, both before and after

 the police arrived. When the husband asked if anyone had “seen anything weird,”

 defendant stood up, walked over to the family whose vehicle had been broken into,

 and started talking to them. Defendant informed the husband that she knew who

 broke into the car and provided him with a name. When the husband informed

 defendant that law enforcement had been contacted, defendant became “irate” and

 said, “no cops.”

¶ 23 Defendant understood that involving law enforcement was detrimental to her

 interests. To conceal her involvement in the crime, she fabricated a story about

 another individual’s involvement. Based on these facts, viewed in the light most

 favorable to defendant, she cannot demonstrate that her “mind and reason were so

 completely intoxicated and overthrown as to render [her] utterly incapable of forming

 [specific intent].” Mash, 323 N.C. at 346, 372 S.E.2d at 536 (cleaned up).

 2 One could argue that Goodman presents an even stronger argument for an
 involuntary intoxication instruction than the case sub judice in light of the amount of alcohol
 that the defendant was shown to have consumed. That an instruction was not required on
 the facts in Goodman provides support for this Court’s admonition that “the doctrine [of
 voluntary intoxication] should be applied with great caution.” Murphy, 157 N.C. at 617–18,
 72 S.E. at 1076–77.
 STATE V. MEADER

 2021-NCSC-37

 Opinion of the Court

¶ 24 Because a voluntary intoxication instruction is only appropriate when the

 record contains evidence that permits the jury to determine that the defendant is

 unable to form the specific intent necessary to support a conviction for the crime

 charged, the trial court did not err when it declined to instruct the jury on voluntary

 intoxication.

 AFFIRMED.
 Justice HUDSON dissenting.

¶ 25 Because I would hold that the evidence, when taken in the light most favorable

 to defendant, was sufficient to warrant a jury instruction on voluntary intoxication, I

 respectfully dissent.

¶ 26 A defendant is entitled to have the jury instructed on voluntary intoxication

 when there is substantial evidence that the defendant was so intoxicated that he or

 she could not form the requisite intent. State v. Mash, 323 N.C. 339, 346 (1988).

 “When determining whether the evidence is sufficient to entitle a defendant to jury

 instructions on a defense or mitigating factor, courts must consider the evidence in

 the light most favorable to defendant.” Id. at 348. In addition, all reasonable

 inferences from that evidence must be drawn in defendant’s favor. Cf. State v.

 Chevallier, 264 N.C. App. 204, 214 (2019) (“In determining whether the trial evidence

 adduced was sufficient to instruct on a particular theory of criminal liability, we

 review the evidence and any reasonable inference from that evidence in the light most

 favorable to the State.”).

¶ 27 In the light most favorable to defendant, the evidence here tends to show that

 she was intoxicated and that she was unaware that she had taken another’s property.

 A rational trier of fact could conclude that defendant was so intoxicated that she could

 not form the requisite intent to commit the offenses charged.

¶ 28 At trial, the jury heard testimony from various witnesses who observed

 defendant at the counseling center. In addition, jurors were shown footage from the
 STATE V. MEADER

 2021-NCSC-37

 Hudson, J., dissenting

 responding officers’ bodycams and so were able to observe defendant’s behavior for

 themselves. This evidence tended to show that defendant was intoxicated at the time

 of the alleged crime. On the day of the incident, there were two calls to 911; the first

 call was by a therapist at the counseling center to report an “intoxicated person,” and

 the second call was by the vehicle owner to report a break-in to his vehicle. The first

 person who called 911 testified that defendant appeared to be intoxicated. Officer

 Fulp, who was on the team that responded to the first 911 call, testified that

 defendant appeared to be intoxicated or impaired by an illegal substance. And, at the

 scene, a witness told an officer that he smelled alcohol on defendant.

¶ 29 There was also evidence, much of which has not been mentioned in the

 majority opinion, that defendant was acting in a manner consistent with intoxication.

 When Officer Fulp first approached defendant, she “started talking about getting beat

 up the night before by a guy named Sebastian,” and then defendant pulled down her

 pants in front of everyone. While speaking with the officers, defendant asked someone

 named Omar for her wallet, but no one named Omar was present at the time. When

 the owner of the counseling center asked the officers if they would continue their

 investigation outside, defendant “became loud” and had to be handcuffed. While the

 officers escorted defendant from the building, defendant claimed that she needed to

 get her bra from the bedroom, but the counseling center had no bedrooms. When she

 was in the police vehicle being questioned by the officers, defendant lost control of her
 STATE V. MEADER

 2021-NCSC-37

 Hudson, J., dissenting

 faculties and urinated on herself. She then refused to get out of the police vehicle.

 Once the officers coaxed her into exiting the vehicle, she produced a stolen

 ammunition magazine from her pocket saying it was her cell phone. Officer Fulp then

 placed defendant back in handcuffs and took her to the jail. From the jail, defendant

 phoned her aunt, who testified that she “sounded delirious.” We are required to

 consider the evidence and draw all reasonable inferences in the light most favorable

 to defendant. Accordingly, I would conclude there was substantial evidence that

 defendant was intoxicated at the time of the alleged crime.

¶ 30 The majority is correct that “[e]vidence of mere intoxication . . . is not enough

 to meet defendant’s burden of production.” Mash, 323 N.C. at 346. “[T]he defense of

 voluntary intoxication depends not on the amount of alcohol consumed, but on its

 effect on the defendant’s ability to form the specific intent [required by the statute].”

 State v. Cagle, 346 N.C. 497, 508 (1997). Evidence of exactly what substance

 defendant consumed, in what quantity she consumed it, and over what period of time

 it was consumed, is not required or dispositive. A defendant is only required to show

 that her intoxication rendered her unable to form the requisite intent to commit the

 crimes charged. Mash, 323 N.C. at 346.

¶ 31 Cases in which a voluntary intoxication instruction has been denied have

 involved either evidence of purposefulness despite intoxication or a complete absence

 of evidence of the effects of intoxication on the defendant’s functioning. In Cagle, for
 STATE V. MEADER

 2021-NCSC-37

 Hudson, J., dissenting

 example, we concluded that the trial court had committed no error in refusing to give

 an instruction on voluntary intoxication when the defendant had consumed

 significant amounts of alcohol and smoked marijuana but had discussed his plan to

 rob the victim, took steps to follow that plan, repeatedly said, “go finish him, go kill

 him,” and planned an alibi. 346 N.C. at 508–09; see also State v. Geddie, 345 N.C. 73,

 95 (1996) (“[E]vidence showed only that defendant drank some liquor. There was no

 evidence indicating that defendant was so intoxicated as to be utterly incapable of

 forming the intent to kill.”); State v. Long, 354 N.C. 534, 538–39 (2001) (holding that,

 despite being “substantially impaired,” actions taken to hide his involvement in the

 crime demonstrated defendant could think rationally); State v. Robbins, 319 N.C. 465,

 509 (1987) (“[N]o evidence was presented showing that the defendant’s capacity to

 think and plan was affected or impaired by intoxication.”).

¶ 32 Likewise, in State v. Goodman, 298 N.C. 1, 12 (1979), we held that intoxication

 alone does not automatically lead to the inference that a defendant cannot form the

 requisite intent. There, we concluded that the trial court had not erred by refusing to

 give an instruction on voluntary intoxication because the evidence showed that

 despite defendant’s consumption of alcohol, he was able to drive, give directions, lead

 a group on a search through a neighborhood looking for items that had been stolen

 from his car, and participate in planning a scheme for disposing of the victim's body.

 Id. at 14. In addition, witnesses testified that defendant was “not in a drunken
 STATE V. MEADER

 2021-NCSC-37

 Hudson, J., dissenting

 condition” and we concluded that “[t]here was no evidence which showed that

 defendant's capacity to think and plan was affected by drunkenness.” Id.

¶ 33 Unlike those cases, from the evidence here one could infer that defendant was

 so intoxicated that she could not form the requisite intent to commit the crimes

 alleged. A reasonable juror could infer from the evidence that defendant was unaware

 of her surroundings, was completely unaware that she had taken items from the

 vehicle, and that her capacity to think and plan was affected by intoxication. For

 example, when the owner of the vehicle discovered the break-in and asked if anyone

 had seen anything, defendant approached the owner and told an unrelated story

 involving a man jumping from a third floor to punch her. Also, when the police arrived

 at the counseling center, defendant believed they had come to help her rather than to

 remove her from the premises.

¶ 34 Additionally, defendant made no effort to conceal her actions. During a

 conversation with the officers, she told them she did not have a cell phone. But a few

 minutes later, when an officer asked her about a bulge in her pocket, she told the

 officer the bulge was her cell phone. She then proceeded to grab the bulge and hand

 it over to the officer without reservation or reluctance. In fact, she had handed the

 officer an ammunition magazine—an item reported missing from the vehicle that had

 been broken into. When the officers reacted to the ammunition magazine as evidence

 of a potential crime, defendant got upset and seemed to believe all of a sudden that
 STATE V. MEADER

 2021-NCSC-37

 Hudson, J., dissenting

 she had handed them a weapon. She said, “I didn’t know [it was a gun]; I would have

 never handed it to you if I would have known it was a gun.” She also wore the

 sunglasses she was later charged with stealing in her shirt in plain sight of the

 officers and other witnesses. Although evidence of defendant being an unskilled

 criminal does not entitle her to a voluntary intoxication instruction, in the light most

 favorable to defendant this evidence tends to show that she could not have formed

 the intent to commit the offenses charged. This evidence goes beyond defendant being

 “excited, intoxicated and emotionally upset,” Mash, 323 N.C. at 347 (quoting State v.

 Hamby, 276 N.C. 674, 678 (1970)), and could support an inference of a real inability

 to comprehend the surroundings and events around her.

¶ 35 Pointing to evidence that defendant walked down a stairway while handcuffed,

 provided biographical information, did not slur her words, and responded to the

 officers’ questions, the majority concludes that this is not a “ ‘very clear case[ ]’ [where]

 the intoxication was so severe that it could have negated [ ] defendant’s ability to form

 specific intent.”1 But the sum of the evidence here is, at best, equivocal. Substantial

 1 I also note that our law does not require that a voluntary intoxication instruction be

 given only in “very clear cases.” The majority quotes from State v. Absher, 226 N.C. 656, 660
 (1946), where our Court quoted from a jury instruction on voluntary intoxication. In that
 instruction, the trial court said, “[a]s the doctrine [of voluntary intoxication] is one that is
 dangerous in its application, it is allowed only in very clear cases.” Id. at 660. Far from
 establishing a threshold requirement that the voluntary intoxication jury instruction only be
 given in very clear cases, our Court was merely quoting from a case in which the trial court
 determined there was sufficient evidence to warrant instructions on voluntary intoxication.
 The trial court then gave that instruction to the jury, warning the jury that the defense
 should only apply in clear cases.
 STATE V. MEADER

 2021-NCSC-37

 Hudson, J., dissenting

 evidence supports the opposite conclusion, and our courts are required to consider the

 evidence in the light most favorable to defendant; in doing so, I would hold that the

 jury should have been instructed on voluntary intoxication.

¶ 36 Finally, I would conclude that the trial court’s failure to deliver the voluntary

 intoxication instruction to the jury was prejudicial. Having been given no instruction

 on voluntary intoxication, the jury was initially split regarding defendant’s intent

 and had to be reminded that they must reach a unanimous verdict. The jury

 continued to deliberate before eventually requesting the definition of “utterly

 incapable,” a term that pertains to the voluntary intoxication defense. The trial

 court’s response was that “utterly incapable” had no legal significance in this case.

 Ultimately, the jury returned guilty verdicts. Because the jury seemed particularly

 concerned with defendant’s ability to form the requisite intent, I would conclude that

 there is a reasonable possibility that had a voluntary intoxication instruction been

 given, the jury would have reached a different result.

¶ 37 When taken in the light most favorable to defendant, there is substantial

 evidence from which a reasonable juror could have found that defendant was so

 intoxicated that she could not form the specific intent to commit the offenses charged.

 In addition, the trial court’s failure to deliver the instruction was prejudicial.

¶ 38 For the foregoing reasons, I respectfully dissent.

 Justice MORGAN and Justice EARLS join in this dissenting opinion.